UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A PLACE FOR MOM, INC.,

        Plaintiff(s),

v.

DANNY LEONHARDT, et al.,

        Defendant(s).

NO. C06-457P

ORDER ON MOTION FOR PRELIMINARY INJUNCTION

The above-entitled Court, having received and reviewed:

1. Plaintiff's Motion for Preliminary Injunction

2. Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction

3. Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED; Defendant Leonhardt is enjoined for the pendency of this action from:

1. Contacting clients and/or institutions with whom he conducted business while employed at A Place For Mom, Inc. (Defendant is not prohibited from accepting unsolicited contacts from these persons or institutions); and

2. Using any information in the course of his business which Plaintiff can establish is proprietary to A Place for Mom, Inc.

**ORD ON MTN**
**FOR PRELIM INJ - 1**

IT IS FURTHER ORDERED that Defendant Leonhardt will maintain records of his business transactions which reflect:

    a.    The name(s) of the individual client(s) for whom he has arranged a placement, and the dates and times of any contacts or consultations;

    b.    The name of any referral agency or professional with whom the client contact originated, and the dates and times Defendant Leonhardt communicated with them;

    c.    The name of the institution with whom the placement was made, and the date on which the placement commences;

    d.    The amount of income generated by the placement, and dates of payment.

IT IS FURTHER ORDERED that, if he has not already done so, Defendant will forthwith cease the use of the phone number which he was assigned while an employee of Plaintiff and discontinue the use of the voicemail message which refers anyone who calls that number to a phone number for Defendant's new business. Defendant shall provide proof that this has been accomplished (or an explanation of why it has not been accomplished) within 10 days of this order.

IT IS FURTHER ORDERED that Plaintiff shall post with the Clerk of the Court a $10,000 bond pursuant to the issuance of the preliminary injunction.

## BACKGROUND

Plaintiff runs a nationwide elder care referral and placement business. Defendant Danny Leonhardt ("Defendant") left a job at a hospice organization to work with Plaintiff as a Regional Director in Atlanta in November 2003. He was required, prior to joining the company, to sign a "Proprietary Information and Invention Agreement" ("the Agreement"), which included a two-year post-employment noncompetition clause (forbidding Defendant from soliciting business from Plaintiff's customers or from offering the same services as Plaintiff). He worked in Atlanta for

ORD ON MTN
FOR PRELIM INJ - 2

approximately a year, then transferred to Charlotte, North Carolina, where he worked for another year. In November 2005, he announced his intention to leave and return to the hospice industry. His termination date was December 22, 2005.

Sometime after the beginning of 2006, Plaintiff learned that Defendant had established a North Carolina corporation named Care Changes, Inc. through which he offered a service similar to theirs in the same geographic area (Georgia, North Carolina, South Carolina) as he covered while employed by Plaintiff. Plaintiff claims that Defendant has solicited some of their customers and made disparaging comments about Plaintiff's financial condition.

## DISCUSSION

Plaintiff must meet one of two standards to obtain injunctive relief:

1. Probable success on the merits and the possibility of irreparable injury, or
2. Serious questions raised with the balance of hardships tipping in Plaintiff's favor.

Metro Publishing, Litd. V. San Jose Mercury News, 987 F.2d 637 (9th Cir. 1993). The Court finds that Plaintiff has partially succeeded in meeting the "success on the merits/irreparable injury" test, and has fashioned a preliminary injunction which reflects the degree of that success.

**Success on the merits/irreparable injury**

A non-compete clause will be enforced by Washington courts when it meets three criteria:

1. The restraint is necessary for the protection of the business or goodwill of the employer;
2. The restraint imposes no greater restriction on the employee than is reasonably necessary to secure the employer's business and goodwill; and
3. The loss of the employee's service does not impose such a degree of injury on the public as to warrant nonenforcement.

Perry v. Moran, 109 Wn.2d 691, 698; *modified*, 111 Wn.2d 885.

ORD ON MTN
FOR PRELIM INJ - 3

The Perry court cited a string of Washington cases upholding noncompetition provisions against the performance of services "so that an employer can protect its client base without the necessity of proving the solicitation or diversion of clients (an evidentiary morass) but need only prove that the client of the employee had been the client of the former employer." Id. at 696.

The Court does not find Defendant's affirmative defenses to enforcement of the agreement particularly strong. Leonhardt argues that Plaintiff misrepresented the nature of the territories which he would "exclusively" control as Regional Director. Plaintiff denies any such representation regarding Atlanta (and claims, in fact, that they have a standing policy that no Regional Director receives an exclusive territory). Regarding Charlotte, Plaintiff's representatives declare that they actually made an exception to their policy and gave Defendant 10 months of exclusivity in that area before hiring another representative for the territory. Defendant's argument that the non-compete agreement is not supported by consideration as it was not revealed to him until after he had accepted Plaintiff's job offer is completely contradicted by the fact that he signed the Agreement on the same day that he signed the acceptance of the job offer (which also stated that employment was contingent on him signing the non-compete agreement).

While the Court does find that Plaintiff has a protectable business interest, Plaintiff does not have a business interest that requires protection in the sweeping fashion attempted by this non-compete provision. As a "middle man" referral type of operation, elder care placement enterprises have two client bases. One is the people who are looking to place elder family members in care facilities; for the most part, this would be a one-time or (at most) two-time service for these clients, not a circumstance in which a business would build a "permanent" relationship. The other client base is the elder care facilities themselves and, as the evidence from both sides makes clear, these clients rely on a multitude of agencies like Plaintiff; on that basis, Plaintiff's business relationship with them might fairly be described as "permanent, but not unique or solitary." It is doubtful that Plaintiff will be

**ORD ON MTN**
**FOR PRELIM INJ - 4**

1 able to establish that a non-compete restriction which prohibits Defendant from <u>any</u> involvement in the
2 elder care industry is "necessary for the protection" of Plaintiff's business.

3 Nor is the restraint fashioned in such a manner as to "impose[] no greater restriction on the
4 employee than is reasonably necessary to secure the employer's business and good will."  The non-
5 compete clause dictates that, for two years following his separation from the company, Defendant will
6 not "directly or indirectly work on any products or services that are competitive with products or
7 services. . . on which I worked or about which I learned Proprietary Information during my
8 employment. . . with the Company."  Pltf Mtn, Exh. K.

9 As the Washington Supreme Court stated (in a concurring opinion) in <u>Labriola v. Pollard</u>
10 <u>Group, Inc.</u>, 152 Wn.2d 828 (2004), "[t]he agreement at issue here is unreasonable because it bars [the
11 employee] from working in his field of expertise even where he takes no unfair advantage of his former
12 employer" and therefore represents "an unfair attempt to. . . secure its business against legitimate
13 competition."  <u>Id.</u> at 847.  The Court believes that Plaintiff has the right to prevent Defendant from
14 making use of any proprietary information he learned during his employment, but the agreement goes
15 far beyond that to prohibit work on "any. . . services that are competitive" with Plaintiff's services.

16 For the reasons enumerated above, the Court finds that Plaintiff is likely to prevail on the
17 merits of its claim only insofar as it can prove that Defendant has unfairly availed himself of
18 information that is uniquely proprietary and available only to Plaintiff's employees.  Accordingly,
19 Defendant will only be enjoined in the conduct of his business from using any information which
20 Plaintiff can establish as proprietary.

21 Similarly, Plaintiff has only partially succeeded in establishing that their damages amount to
22 "irreparable injury."  Plaintiff admits there is no Ninth Circuit law which holds that breach of a non-
23 compete clause gives rise to an inference of irreparable harm.  The cases which they cite from other
24 circuits all involve circumstances which do not apply to these facts – insurance companies (<u>Overholdt</u>

25

26 **ORD ON MTN**
**FOR PRELIM INJ - 5**

Crop Ins. Serv. Co. v. Travis, 941 F.2d 1361 (8th Cir. 1991) and high-tech fiber optics businesses (Ciena Corp. v. Jarrard, 203 F.3d 312 (4th Cir. 2000) which have a more permanent client base than Plaintiff; a loss of fair competition in a marketplace (JAK Productions, Inc. v. Wiza, 986 F.2d 1080 (7th Cir. 1993); here Plaintiff has yet to produce any evidence that Defendant is using information which is only available through their proprietary database to compete with them), or a loss of consumer goodwill (Ferrero v. Associated Materials, Inc., 923 F.2 1441 (11th Cir. 1991); other than hearsay statements alleging disparaging remarks by Leonhardt, Plaintiff has produced no evidence that Defendant's activities have damaged their consumer goodwill).

Based on the evidence adduced by the parties, the Court has been able to find the possibility of irreparable injury in only one possible set of circumstances: if Defendant can be shown to have contacted institutional clients of Plaintiff's, the creation of a business relationship (and corresponding detriment to Plaintiff's relationship with the client) could wreak long-term, incalculable damage on Plaintiff's business.   Plaintiff has only been able to cite one instance where Defendant has "beaten" them to a referral, and again they produce no evidence to suggest that Defendant used any other means than those publicly available to secure the referral.  But Defendant will be enjoined from initiating any contact with institutional elder care placement facilities with whom he conducted business while an employee of A Place for Mom, Inc.  A similar prohibition will be extended to any individual clients whom he serviced as a Regional Director for Plaintiff.

To assist the Court and Plaintiff in monitoring compliance with this preliminary injunction and in calculating monetary damages should Plaintiff ultimately prevail in this litigation, Defendant Leonhardt will be required to maintain records of his business transactions which reflect:

    a.    The name(s) of the individual client(s) for whom he has arranged a placement, and the dates and times of any contacts or consultations;

  b. The name of any referral agency or professional with whom the client contact originated, and the dates and times Defendant Leonhardt communicated with them;

  c. The name of the institution with whom the placement was made, and the date on which the placement commences;

  d. The amount of income generated by the placement, and dates of payment.

**Serious questions/balance of hardship**

There are not any overarching issues of public policy at stake here – this is a case of a former employee who does not feel he should be bound by what he construes as an unreasonable non-compete agreement. While this is a "service" industry in some sense, it is also unquestionably a profit-seeking business enterprise and the Court does not find that the public interest is implicated in any significant way in the dispute between these parties.

The "balance of hardship" test tips in Defendant's favor. Outside of a string of hearsay allegations about disparaging remarks and damaged goodwill, Plaintiff has produced no evidence to establish that, over the three-state area, Defendant's activities are having an ongoing detrimental effect on them in the areas of consumer goodwill or reputation. On the other hand, Plaintiff is a national corporation (its website claims that it is the "largest eldercare referral network" in the country); Defendant is running a small start-up enterprise. If Defendant is illicitly appropriating customers from Plaintiff using improper information, the injunctive measures which this order puts in place will enable detection of that fact, and those damages can be readily ascertained on a transaction-by-transaction basis. The Court contrasts that to the effect of a wholesale shutdown of Defendant's business operations and finds that the balance is inclined toward Defendant.

**Defendant's Telephone Number**

**ORD ON MTN**
**FOR PRELIM INJ - 7**

At the close of oral argument on this motion, Defendant was ordered to immediately terminate the use of the phone number which he was assigned while an employee of Plaintiff. The Court has since received correspondence from both sides on this topic, both by way of status report on Defendant's progress in complying with the order and by way of a discussion of the nature of a tape recording of Defendant's voicemail messages that defense counsel played in court during oral argument. For the record, the Court wishes to make clear that it was understood at the time the tape was played that what the defense was presenting was phone messages from two different phones, not a single voicemail message and the Court does not feel misled in any regard.

It is apparent from Defendant's correspondence that Bell South has been less than cooperative in helping him accomplish what has been required of him. The Court trusts that Defendant's compliance efforts are ongoing and orders Defendant to provide either proof of compliance or a status report on compliance within 10 days of the date of this order.

## CONCLUSION

The Court will not grant the sweeping injunction sought by Plaintiff. Defendant will, however, be enjoined from initiating contact with any individuals or institutions with whom he developed a business relationship while working for Plaintiff. This prohibition does not extend to contacts which Defendant does not initiate; i.e., if he receives an unsolicited contact from such a party, he is not prohibited from entering into discussions with them.

Defendant will also be required to create and maintain business records which track his individual clients, his referral sources, the elder care facilities with which he makes placements and the income which his referrals generate for his business. Those records will be produced for inspection upon satisfactory proof by Plaintiff that Defendant is violating any of the terms of this preliminary injunction.

**ORD ON MTN**
**FOR PRELIM INJ - 8**

Plaintiff shall post a minimal bond of $10,000 with the Clerk of the Court which shall stand as security against any possible damages arising out of the issuance of this injunction during the pendency of the litigation.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: August __4__, 2006

*[signature]*

Marsha J. Pechman
U.S. District Judge

**ORD ON MTN**
**FOR PRELIM INJ - 9**